IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-207-RJC-DCK

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA and SCHAEFER SYSTEMS INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) **ORDER** ) ) ) ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Transfer Venue" (Document No. 17). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>deny</u> the pending motion.

## BACKGROUND

Mitsui Sumitomo Insurance Company Of America ("Mitsui") and Schaefer Systems International, Inc. ("Schaefer") (together, "Plaintiffs") seek reimbursement from Travelers Property Casualty Company Of America ("Travelers" or "Defendant") of amounts they paid to defend Schaefer in the lawsuit captioned <u>Nephron Pharmaceuticals Corp., et al. v. Schaefer Systems Int'l, Inc., et al.</u>, No. 2013-CA-003799-O, in the Circuit Court of the Ninth Judicial Circuit, Orange County, Florida ("Underlying Lawsuit"). (Document No. 1, p.1). The Underlying Lawsuit arose out of work performed by Schaefer and Wiginton Corporation ("Wiginton") at a

warehouse in Florida owned by Nephron Pharmaceuticals, Inc. ("Nephron"). (Document No. 1, p.2).

Schaefer contracted with Nephron for construction of various portions of the warehouse, including a pallet rack storage system and an automatic fire sprinkler system. Id. On July 20, 2011, Schaefer entered into a subcontract with Wiginton (the "Wiginton Subcontract") for Wiginton to design and install the fire sprinkler system at Nephron's warehouse. (Document No. 1, p.3). Pursuant to the Wiginton Subcontract, Wiginton agreed to maintain commercial general liability insurance, and to include Schaefer as an additional insured under that policy. Id. Travelers issued Commercial General Liability Policy No. VTC2J-CO-1098A575-TIL-12 to Wiginton for the policy period January 1, 2012 to January 1, 2013 ("Travelers' Policy"). (Document No. 1, p.5).

On May 30, 2012, Nephron was operating the pallet system when a pallet came into contact with a fire sprinkler head designed and installed by Wiginton, causing water to discharge in the warehouse, which caused damage to Nephron. (Document No. 1, p.4). As a result, Nephron made claims against Schaefer and Wiginton. Id. Nephron filed the Underlying Lawsuit on March 13, 2013. Id.

Mitsui accepted the defense of Schaefer in the Underlying Lawsuit pursuant to General Commercial Liability Policy No. GL2122340, issued to Schaefer for the policy period December 31, 2011 to December 31, 2013 ("Mitsui Policy"). (Document No. 1, pp.4-5). Schaefer and Mitsui sought coverage for the Underlying Lawsuit from Wiginton's insurer, Travelers. (Document No. 1, p.5). Plaintiffs assert that Schaefer is an additional insured under Travelers' Policy and that Travelers owed a primary duty to defend Schaefer in the Underlying Lawsuit. (Document No. 1, pp.1-2).

Plaintiffs acknowledge that Travelers ultimately agreed to defend Schaefer, but assert that Travelers has failed to pay all defense costs and expenses incurred from the time it had notice of the claim and additional insurance coverage was requested.  (Document No. 1 p.2).  Plaintiffs seek reimbursement of costs and fees incurred prior to June 19, 2014.  (Document No. 17, p.2). Plaintiffs contend that they "incurred over $2,100,000 in defense costs and expenses, which should have been paid by Travelers."  (Document No. 1, p.12).  The Underlying Lawsuit was settled and dismissed in or around February 2015.  (Document No. 17-1, p.2).

Plaintiffs initiated this action with the filing of a "Complaint" (Document No.1) against Defendant on May 6, 2015.  The Complaint asserts claims for:  (1) declaratory relief;  (2) breach of contract;  and (3) equitable subrogation.  (Document No. 1, pp.12-14).  Defendant Travelers filed its "Answer and Defenses" (Document No. 14) on June 19, 2015, and then filed its pending "Motion To Transfer Venue" (Document No. 17), pursuant to 28 U.S.C. § 1404(a), on June 23, 2015.  By the instant motion, Defendant seeks an order transferring this action to the United States District Court for the Middle District of Florida, Orlando Division.  (Document No. 17, p.1).

The pending motion is now ripe for review and disposition.

## STANDARD OF REVIEW

Regarding a change of venue, 28 U.S.C. § 1404 provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  In addition, previous decisions by this Court are instructive.

> Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and witnesses, in the interest of justice," transfer the action to another district where venue is proper.  28 U.S.C. § 1404(a) (2006).  This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate

3

> motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties. AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)).

McLeod Addictive Disease Center, Inc. v. Wildata Systems Group, Inc., 3:08-CV-27-GCM 2008 WL 2397614, at *1 (W.D.N.C. June 10, 2008). "The Court emphasizes that the applicable law contemplates that a court's decision to transfer or not transfer venue under 28 U.S.C. § 1404(a) is largely discretionary." 3A Composites USA, Inc. v. United Industries, Inc., 5:13cv083-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

> When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. Id. at 96. The factors are accorded different weights based on the court's discretion. Id.

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 362 (W.D.N.C. 2003) (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990)); see also, Cohen v. ZL Technologies, Inc., 3:14cv377-FDW-DSC, 2015 WL 93732, at *1-2 (W.D.N.C. Jan. 7, 2015).

## DISCUSSION

The factors to be considered in deciding whether to allow a change of venue are well-established, as set forth above. The undersigned weighs these factors as follows.

1. **Plaintiffs' initial choice of forum**

The Complaint asserts that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. (Document No. 1, p.2).

Defendant notes that a plaintiff's choice of forum should be given "significant weight," but asserts that "that weight is diminished when the conduct giving rise to the complaint did not occur in the forum." (Document No. 18, p.4) (quoting Celgard, LLC v. LG Chem, Ltd., 3:14-CV-043-MOC-DCK, 2015 WL 2412467, at *5 (W.D.N.C. May 21, 2015)). Defendant argues that Plaintiffs' choice of forum should not be afforded significant weight because the conduct giving rise to the Complaint – the Underlying Lawsuit and Defendant's refusal to reimburse Plaintiffs for all costs and fees – occurred in the Middle District of Florida. Id. Defendant concludes this factor is neutral. Id.

Plaintiffs note that "a plaintiff's choice of forum should be accorded great weight and should not be lightly disturbed unless the balance is tipped strongly in favor of the moving party." (Document No. 19, p.3) (citing Dominion Square-Culpepper, LLC v. KB Toys Retail, Inc., 3:08-CV-179-DCK, 2008 WL 2945448, at *1 (W.D.N.C. July 24, 2008)). Plaintiffs further note that "[i]f a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean only slightly in defendant's favor, the Court should not disturb the plaintiff's choice of forum." Id. (citing Dominion Square-Culpepper, 2008 WL 2945448, at *3, (quoting Bates v. J.C. Penny Co., Inc., 624 F.Supp. 226, 227 (W.D.N.C.1985))).

Plaintiffs argue that Schaefer chose to file in its home state, where it entered into a subcontract with Wiginton, Travelers' insured, which is governed by North Carolina law. (Document No. 19, p.5). Plaintiffs further assert that Schaefer's insurance agent in Charlotte

5

notified Defendant of its status as an additional insured well before the Underlying Lawsuit, and that the disputed payments were made from Charlotte. Id. In addition, Plaintiffs contend that Defendant's attorney corresponded extensively with Schaefer's North Carolina counsel about this dispute. Id. Plaintiffs conclude that Defendant should not be surprised to find itself being sued in this forum. Id.

The undersigned weighs this factor against transfer.

2. **Residence of the parties**

Plaintiff Mitsui is a New York company with a principal place of business in New Jersey; and Plaintiff Schaefer is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. (Document No. 1, p.2). Defendant Travelers is a Connecticut corporation with its principal place of business in Connecticut. Id.

Defendant "acknowledges that this factor could weigh slightly against transfer," but suggests the weight would be diminished if Mitsui is "deemed the primary plaintiff." (Document No. 18, pp.4-5).

Plaintiffs note that Defendant "cites no cases to support its contention that a plaintiff's residence in a forum should be disregarded when another plaintiff has a larger damages claim." (Document No. 19, p.6). Plaintiffs then assert that Defendant could be considered a resident of this District for venue purposes, because it is subject to personal jurisdiction here. Id. (citing 28 U.S.C. § 1391(c)(2)).

The undersigned weighs this factor against transfer.

3. **Access to evidence**

Defendant contends that this factor "strongly favors transfer to the Middle District of Florida." (Document No. 18, p.5). Defendant asserts that most of the witnesses with knowledge

6

of the timing and substance of Schaefer's request to Travelers, i.e. Schaefer's defense counsel in the Underlying Lawsuit and Travelers' claims personnel, are located in the Middle District of Florida. Id. (citing Document No. 17-2). Defendant further asserts that the primary fact witnesses are Schaefer's defense counsel located in Orlando, and possibly expert witnesses who will necessarily be Florida licensed attorneys. Id. Defendant acknowledges that Schaefer will have employee witnesses who are resident in this forum. Id.

Plaintiffs first contend that the group of witnesses identified by Defendant, while located in Florida, are unlikely to have testimony material to the central issues in the case. (Document No. 19, p.6). Plaintiffs note that "Travelers concedes the key liability issue is whether Schaefer's communications to Travelers were legally sufficient to trigger Travelers' duty to defend." Id. As such, Plaintiffs argue that this legal issue involves evidence that resides in documents, including Travelers' and Mitsui's policies, and the written communications from Schaefer to Travelers. Id. Plaintiffs contend most of these documents are attached to the Complaint and/or can be readily produced in any location.

In further opposition, Plaintiffs argue that to the extent witness testimony is needed, the likely witnesses are "essentially party witnesses." (Document No. 19, p.7). Plaintiffs conclude that relevant witnesses are located in both North Carolina and Florida, and that a transfer based on this factor would inappropriately shift the inconvenience from Defendant to Plaintiffs. Id.

The undersigned weighs this factor as neutral.

**4**. **Availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses**

Defendant contends that virtually all of the witnesses it has identified are subject to compulsory process in the Middle District of Florida, and that only Schaefer employees are subject to compulsory process in this forum. (Document No. 18, p.5). Regarding "willing" witnesses,

Plaintiff contends airfare associated with bringing Florida witnesses to Charlotte will be substantial, and that Mitsui employees or representatives will be required to travel to either forum. Id.

Plaintiffs first note that the bulk of relevant evidence will be found in documents attached to the Complaint, not from witness testimony. (Document No. 19, p.8). Plaintiffs further note that the identified witnesses here are all associated with the parties to the case, and will not require compulsory process. Id.

The undersigned observes that "the convenience of non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue." Volvo Road Mach., Inc. v. J.D. Evans, Inc., 1:08-CV-156-LHT, 2008 WL 4610045, at *4 (W.D.N.C. Oct. 16, 2008) (quoting Ramsey v. Fox News Network, LLC, 323 F.Supp.2d. 1352, 1356 (N.D.Ga. 2004); see also, Union First Mkt. Bank v. Bly, 3:13-CV-316-GCM, 2013 WL 4455619, at *3 (W.D.N.C. Aug. 16, 2013) ("[o]ften cited as the most important factor ... is the convenience of witnesses, most particularly, non-party witnesses, who are important to the resolution of the case") (quoting Hames v. Morton Salt, Inc., 3:11-CV-570-MOC-DSC, 2012 WL 1247201 at *3 (W.D.N.C. 2012)).

This factor appears to present a particularly close call. As noted above, it is unclear which, if any, of the proposed witnesses necessitate the availability of compulsory process to testify at trial. Moreover, some witnesses and counsel will likely be required to travel from Connecticut, New York, and/or New Jersey to either forum. To the extent witnesses are necessary, it appears that more of them are located in the Middle District of Florida.

Based on the information before the Court, the undersigned finds that this factor weighs in favor of transfer.

### 5. **Possibility of a view by the jury**

The parties agree that a view is unnecessary, and that this factor should be weighed as neutral.

### 6. **Enforceability of a judgment**

The undersigned cannot foresee, and the parties have not identified, any concerns about the enforcement of a judgment by a U.S. District Court in North Carolina or Florida. This factor is weighed as neutral.

### 7. **Relative advantages and obstacles to a fair trial**

The undersigned does not foresee, and the parties do not argue, that there are any clear advantages or obstacles to a fair trial in either district. The parties should obtain a fair trial in either North Carolina or Florida.

As such, the undersigned finds this factor is neutral.

### 8. **Practical issues affecting trial expediency and efficiency**

"Trials are never easy, expeditious, or inexpensive." Century Furniture, LLC v. C & C Imports, Inc., 1:07cv179-DLH, 2007 WL 2712955, at * 5 (W.D.N.C. Sept. 14, 2007). Whatever this Court decides, there will be some travel and inconvenience.

Again, the undersigned is not convinced there are any real concerns about practical issues that will impact trial expediency or efficiency. This factor will also be weighed as neutral.

### 9. **Relative court congestion between the districts**

The parties appear to agree that this factor is neutral. See (Document No. 18, pp.6-7; Document No. 19, p.9). However, reviewing more recent statistics, the undersigned is persuaded that the Middle District of Florida is more congested than this Court. See http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-0.

The undersigned makes the following observations of the statistics available as of June 30, 2015: pending cases per judgeship – W.D.N.C. 335, M.D.Fla. 573; median time from civil filing to disposition – W.D.N.C. 8.5 months, M.D.Fla. 8.3 months; number of civil cases over three years old – W.D.N.C. 38, M.D.Fla. 438. Id.

Based on the foregoing, the undersigned will weigh this factor as against transfer.

**10**. **The interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action**

Defendant notes that this is a diversity case, and argues that the disputed legal issues all relate to interpretation of the Travelers Policy, issued and delivered to Wiginton in Florida. (Document No. 18, p.7). Florida law will apply to all issues in connection with the Travelers Policy. Id.

Plaintiffs argue that the fact the Underlying Lawsuit took place in Florida does not make it a localized controversy. (Document No. 19, p.10). Plaintiffs acknowledge that this case involves Florida law, but argue that North Carolina law will also play an important role. Id. Plaintiffs finally argue that none of the parties are Florida residents, and that this Court has an interest in resolving a controversy involving a North Carolina resident. (Document No. 19, p.11).

The undersigned observes that the Underlying Lawsuit, and the underlying events involving the Nephron warehouse, occurred in Florida. Moreover, "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events. Speed Trac Technologies, Inc. v. Estes Express Lines, Inc., 567 F.Supp.2d 799, 804 (M.D.N.C. 2008).

The undersigned is not convinced that this is a "localized controversy," especially to the extent it involves interpretation of insurance policies entered into by sophisticated parties

principally located outside Florida. However, it does appear that the judicial district with the closest relationship to the operative events is the Middle District of Florida.

The undersigned finds this factor slightly favors transfer.

**11**. **Avoidance of conflict of laws**

The parties appear to agree that no conflict of law analysis is required. The undersigned will weigh this factor as neutral.

*      *      *      *

Based on the foregoing, and in accordance with the guidance of Jim Crockett Promotions, Inc. v. Action Media Group, Inc., the undersigned has conducted a quantitative and qualitative analysis of the foregoing factors, and finds that a change of venue is not appropriate in this case. See Century Furniture, LLC, 1:07cv179-DLH, 2007 WL 2712955, at *6 (W.D.N.C. Sept. 14, 2007). In short, Defendant has not met its burden of showing that the foregoing factors favor transfer. While this case presents a close call, the undersigned is not persuaded that the factors favoring transfer outweigh those factors that favor retention by this Court. As such, the undersigned will decline to disturb Plaintiffs' choice of forum.

**CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion To Transfer Venue" (Document No. 17) is **DENIED**.

**SO ORDERED**.

Signed: October 8, 2015

David C. Keesler
United States Magistrate Judge