UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-CV-00207-RJC-DCK

| | | |
|---|---|---|
| MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, and SCHAEFER SYSTEMS INTERNATIONAL, INC. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** comes before the Court on the motion of Defendant Travelers Property Casualty of America ("Travelers") for summary judgment, (Doc. No. 36), the cross-motion of Plaintiffs Mitsui Sumitomo Insurance Company of America ("Mitsui") and Schaefer Systems International, Inc. ("Schaefer") (collectively with Mitsui, "Plaintiffs") for summary judgment, (Doc. No. 46), and related pleadings. The issues have been fully briefed and are ripe for adjudication following oral argument.

I.  BACKGROUND

This civil case arises out of Travelers' duty to defend Schaefer against a property damage claim raised by Nephron Pharmaceuticals ("Nephron") against Schaefer and its subcontractor Wiginton Corporation ("Wiginton") for alleged faulty sprinkler installation in a warehouse.

Nephron hired Schaefer, a construction company based in Charlotte, North Carolina, to build warehouse in Orlando, Florida. (Doc. No. 1: Compl. at 2). On July 20,

1

2011, Schaefer subcontracted the design and installation of the fire sprinkler system to Wiginton. (Id. at 3). The contract between Schaefer and Wiginton required the subcontractor to maintain insurance protecting Schaefer as an "additional insured" from claims based on faulty work by Wiginton. (Id.; Doc. No. 13-1: Compl. Ex. A). Wiginton obtained such insurance from Travelers and provided proof to Schaefer of the coverage. (Doc. No. 13-2, -5: Compl. Ex. B, E). Schaefer maintained its own insurance with Mitsui. (Doc. No. 13-4: Compl. Ex. D).

On May 30, 2012, a pallet struck a sprinkler head causing water damage to Nephron's property in the warehouse. (Doc. No. 1: Compl. at 4). On July 18, 2012, Nephron CEO Lou Kennedy emailed Schaefer Executive Fritz Schaefer stating the claim based on Wiginton's sprinkler installation, advising that Nephron's and Wiginton's insurance adjustors were involved, and requesting contact with Schaefer's insurance adjuster. (Doc. No. 61-2: Second Doerr Decl. Ex. A). Kennedy also refused to make further payments on the building's construction until the damage claim was resolved. (Id.). Later that same day, Schaefer's insurance agent Dee Bumgardner with Wells Fargo Insurance Services followed up a phone conversation with an email to Travelers Senior Technical Specialist Danny Williams stating Travelers was working with Wiginton on the water damage claim at Nephron and concluding with reference to Wiginton's contractually required indemnification of Schaefer and Schaefer's "additional insured status" with Travelers.[1] (Doc. No. 13-6: Compl. Ex. F). Bumgardner included Mitsui

---

[1] The email message reads, in pertinent part:
   Concerning the Schaefer Systems insurance program as discussed we have advised our insurance carrier Mitsui Sumitomo of the water damage claim and Dave Bass … is our assigned representative. I am sure you will review the construction contract and note that Wiginton indemnified Schaefer Systems and they are also provided additional insured status as it relates to this project.

Claim Counsel David Bass in the communication, and Bass began working with Williams to set up an on-site investigation of the damage. (Id.).

On September 7, 2012, Bass sent an email message to Williams reading, in pertinent part:

> At your convenience, can you confirm that Travelers is extending defense/indemnity to Schaefer under the additional insurance coverage required under the contract.

(Doc. No. 13-7: Compl. Ex. G). On September 11, 2012, Williams responded to Bass:

> Right now there are no formal allegations outlining this claim. Until we have has them or suit is filed, [Travelers] will not have enough information to make a decision as to our contractual obligations to [Schaefer]."

(Id.).

On September 24, 2012, Kennedy sent a letter to Schaefer executives Arnold Heuzen and Christoph Schenck and to Alan Wiginton requesting a meeting to resolve the damage claim prior to filing a lawsuit as required by construction contract between Nephron and Schaefer. (Doc. No. 51-1: Doerr Decl. Ex. G). That mediation took place on February 23, 2013, attended by counsel retained by Travelers on behalf of Wiginton, along with attorneys representing Schaefer. When mediation did not resolve the claim, Nephron filed suit against Schaefer and Wiginton in Florida state court on March 13, 2013. (Doc. No. 13-3: Compl. Ex. C). In addition to alleging the sprinkler had been installed too low, Nephron claimed Schaefer illegally entered into the warehouse construction contract as an unlicensed contractor, seeking recovery on the property loss (in excess of $1,800,000), plus treble damages, as well as disgorgement for all payments under the construction contract ($9,091,514.88). (Id. at 13). Nephron also alleged the lien Schaefer placed on the property when Nephron suspended construction payments

was fraudulent, seeking compensatory and punitive damages. (Id. at 28).

During a mediation in the state court litigation on June 19, 2014, Schaefer attorney Sean McDonough and Heuzen hand-delivered a letter to Travelers Major Claim Specialist Gregory Kasbarian. (Doc. No. 13-8: Compl. Exh. H). Schaefer wrote "to renew a tender" and "formally re-tender[] its defense and indemnity of [Nephron's lawsuit] to Travelers" pursuant to the additional insured provision in Wiginton's construction contract. (Id. at 1). The letter recited:

> Travelers previously received notice, originated by Schaefer, of the incident that forms the basis of the [Nephron] lawsuit. In addition, an email was sent to Travelers on September 7, 2012, seeking to confirm additional insured coverage for Schaefer. Travelers' response was that it had no obligation to provide additional insured coverage until suit was filed. As you know, that condition was satisfied.

(Id.). The letter noted the possibility of a settlement that would be funded by a combination of funds from Travelers and Mitsui, as well as adjustments to the construction contract. (Id. at 2).

On July 16, 2014, Kasbarian responded by email and letter to McDonough stating Wiginton did not owe indemnity for Schaefer's alleged negligent acts and tendered the defense to Mitsui based on the contract between Schaefer and Wiginton. (Doc. No. 13-9, -10: Compl. Ex. I, J). On July 19, 2014, McDonough and Bass replied to Kasbarian by letter refuting the basis for denial of coverage and correcting the scrivener's error in the contract between Schaefer and Wiginton about which entity was providing indemnification to the other. (Doc. No. 13-11: Compl. Ex. K). The letter also highlighted Travelers' lack of response prior to July 16, 2014, to Schaefer's September 7, 2012, and June 19, 2014, requests for coverage. (Id.).

On July 25, 2014, Travelers coverage counsel Gary Dunlap sent a letter to Mitsui

4

attorney Robert Marshall to "serve as the initial response of Travelers to the July 19, 2014 letter" to Kasbarian, agreeing to participate in the defense of Schaefer in the Nephron litigation and to reimburse covered defense fees retroactive to June 19, 2014, when the defense "was first tendered to Travelers," with reservation of certain rights. (Doc. No. 53-1: Doerr Decl. Ex. M).

On July 28, 2014, Marshall responded seeking confirmation that Travelers agreed that Schaefer was an additional insured under Travelers policy and seeking settlement authority up to the policy's limit. (Doc. No. 53-1: Doerr Decl. Ex. N). On July 29, 2014, Dunlap responded to Marshall stating that Travelers' defense of Schaefer would extend to all claims in the Nephron litigation retroactive to June 19, 2014, the date Schaefer's defense was "actually tendered to Travelers," as compared to the "pre-litigation tender of Nephron's claim," and limiting settlement authority to $500,000. (Doc. No. 53-1: Doerr Decl. Ex. O).

On August 22, 2014, Travelers Major Case Specialist Laurie Johnson sent Mitsui local counsel Adam Doerr a letter specifically limiting its agreement to the continued retention of the Wilson Elser law firm and refusing to reimburse any fees paid to the Holland & Knight law firm. (Doc. No. 36-3: Kasbarian Aff. Ex. 3).

There are no disputes about these material facts, but the parties contest the legal significance of communications, specifically relating to when Schaefer "tendered" its defense of the Nephron lawsuit to Travelers. The parties also disagree as to whether the duty to defend obligates Travelers to reimburse Schaefer for work performed by Holland & Knight. As detailed below, because Schaefer communicated to Travelers that it desired defense and indemnity coverage in September 2012, the Court will find that

5

Travelers breached its duty to defend Schaefer when Nephron filed its lawsuit on March 13, 2013, and Travelers did not confirm coverage and provide a defense.

II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This "burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

III.  DISCUSSION

   A.  Tender of Defense

An insurance company's "defense obligation is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." The Hartford Acc. and Indem. Co. v. Gulf Ins. Co., 776 F.2d 1380, 1383 (7th Cir. 1985) (internal quotations and citations omitted).[2] The tender requirement is satisfied when the insurer has "knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." Id. Thus, the most crucial issue before the Court is the date on which Schaefer "tendered" its defense to Travelers because, as the insured, Schaefer retained the option to defend itself rather than rely on

---

[2] This Court, sitting by diversity jurisdiction, applies state substantive law and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Courts in Florida have cited Hartford on the issue of the tender requirement, see e.g. Scotsdale In.s Co. v. Shageer, 2010 WL 4961166, slip op. at *7 (S.D. Fla. Dec. 1, 2010)(unpublished); Cont'l Cas. Co. v. United Pac. Ins. Co., 637 So. 2d 270, 275 (Fla. Dist. Ct. App. 1994)(en banc), and Travelers has not cited any Florida decision applying different standards.

7

the indemnity and defense coverage available as an additional insured under Wiginton's policy.

That policy gave Travelers the discretion to investigate any "occurrence" and settle any "claim" or "suit," but imposed "the right and duty" to defend Schaefer against any "suit" for property damage. (Doc. No. 13-5: Compl. Ex. E at 15). The policy defines a suit as "a civil proceeding in which damages because of … property damage … to which this insurance applies are alleged." (Id. at 29). Suit includes:

> 1. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
> 2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Id.).

There is no factual dispute that Schaefer notified Travelers as soon as practicable of the incident at the warehouse as required by the policy. (Id. at 24). There is also no factual dispute that Schaefer's representative requested defense and indemnity coverage in the September 7, 2012, email message to Travelers' representative, who did not deny the coverage, but rather deferred a decision until Travelers received formal allegations of the "claim" or until "suit" was filed. (Doc. No. 13-7: Compl. Ex. G). Finally, there is no factual dispute that Travelers later received Nephron's March 13, 2013, lawsuit naming Schaefer and Wiginton as defendants and containing claims potentially within the policy coverage. (Doc. No. 53-1: Doerr Decl. Ex. O (Travelers counsel's letter extending coverage to all claims in lawsuit).

Schaefer argues that the Travelers received formal allegations as part of the information exchange that took place among the parties prior to the February 2013

8

mediation; thus, Travelers' duty to defend began at that point since the contract between Nephron and Schaefer required mediation prior to a party filing suit, (Doc. No. 13-1: Compl. Ex. A), and Travelers retained counsel to represent Wiginton at that stage. (Doc. No. 47: Pl. Mem. at 15). However, Schaefer was not required to participate in that pre-suit mediation and there is no evidence that Travelers consented to Schaefer's involvement. Therefore, the Court finds as a matter of law that Travelers' duty to defend was not triggered at that point.

Travelers argues that its duty to defend could not be triggered by Schaefer's pre-suit communications and that Schaefer did not formally tender the defense post-suit until June 2014. (Doc. No. 60: Def. Mem. at 8, 11). However, Travelers offers no legal authority to ignore the earlier communication and demand a secondary communication "actually" tendering the defense after the lawsuit was filed. As detailed above, the tender requirement is satisfied when: 1) the insurer has knowledge that the suit is potentially within the policy's coverage; and 2) the insurer knows that its assistance is desired. Hartford, 776 F.2d at 1383. It is not disputed that Travelers' representative understood the September 2012 communication as Schaefer's request for coverage; therefore, the Court finds as a matter of law that the tender requirement was satisfied when the lawsuit was filed on March 13, 2013, giving Travelers notice that it implicated the policy's coverage. Accordingly, Travelers breached its duty to defend at that point.

B. Florida Statute/Voluntary Payments Provision

In addition to the communication among the parties, Plaintiffs rely on the Florida Claims Administration Statute, Section 627.426(2), to estop Travelers from arguing a deficiency in Schaefer's tender of the defense. (Doc. No. 47: Pl. Mem. at 17). Plaintiffs

assert that Travelers had 30 days from the date it knew or should have known it had a basis to deny coverage to provide written notice of reservation of rights to Schaefer. (Id.). Thus, Travelers' silence following the September 7, 2012, email bars it from limiting coverage retroactively to June 19, 2014.

Travelers responds that the statute is inapplicable because it never denied coverage, but rather agreed to defend Schaefer when it finally tendered the defense on June 19, 2014. (Doc. No. 60: Def. Mem. at 13-14). Based on that premise, Travelers characterizes Schaefer's defense costs prior to that point as unrecoverable "voluntary payments" to attorneys that were hired at Schaefer's own cost without Travelers' consent, according to the policy. (Doc. No. 13-5: Compl. Ex. E at 25).

Because the Court has found that Travelers' duty to defend was not triggered and breached until the filing of the March 13, 2013, lawsuit, it is not necessary to reach this issue.

C. Damages

Travelers disputes that its duty to provide a defense includes paying for the work of both law firms engaged by Schaefer. (Doc. No. 36: Def. Mot. at 8-9). After initially agreeing to defend Schaefer on all claims in the Nephron lawsuit, subject to a general reservation of rights regarding claims outside the policy's coverage, (Doc. No. 53-1: Doerr Decl. Ex. O), Travelers Major Case Specialist Laurie Johnson sent Mitsui local counsel Adam Doerr a letter on August 22, 2014, specifically limiting its agreement to the continued retention of the Wilson Elser law firm and refusing to reimburse fees paid to Holland & Knight. (Doc. No. 36-3: Kasbarian Aff. Ex. 3).

10

"In fulfilling its duty to defend, 'the insurer employs counsel for the insured ... and controls the insured's defense after a suit is filed on a claim,' which includes 'mak[ing] decisions as to when and when not to offer or accept settlement of the claim.'" W. Heritage Ins. Co. v. Montana, 30 F. Supp. 3d 1366, 1371 (M.D. Fla. 2014), aff'd, 623 F. App'x 525 (11th Cir. 2015) (quoting Doe on Behalf of Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995)). "But if an insurer wrongfully refuses to defend, the insurer breaches its duty to defend and forfeits its right to control the defense. This 'relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account.'" Id. at 1372 (quoting BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So. 2d 668, 673 (Fla. Dist. Ct. App. 2006)).

The Church case is particularly instructive because of its closeness to the facts of the instant matter. There, BellSouth contracted with Church & Tower to install a utility pole. Id. at 670. The contract between the parties required Church & Tower to obtain "additional insured" coverage for BellSouth, which it did from Liberty Mutual. Id. When a third party sued BellSouth and Church & Tower for a personal injury relating to the utility pole, Liberty defended Church & Tower, but not BellSouth, claiming BellSouth's notice of the claim was untimely. Id. BellSouth obtained its own qualified counsel to defend the personal injury lawsuit and sued Liberty for breach of contract. Id. Liberty ultimately reversed its position and accepted coverage, but sought to control BellSouth's defense with counsel of its own choosing. Id. The Florida appellate court ruled that it is well-settled law that when an insurer refuses to defend, and "if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of

11

the insured's litigation costs." Id. at 670-671.  Additionally, "once an insurer wrongfully withdraws from the defense of a case, the insured has the right to refuse to allow the insurer to re-enter the case and take charge of it." Id. at 673.

Here, the Court has found above that Travelers wrongfully failed to provide coverage to Schaefer when Nephron filed its March 2013 lawsuit.  Consequently, Schaefer was forced to assume its own defense to the diverse property damage and construction payments claims raised in the state court action.  Plaintiffs have shown that the Holland & Knight law firm performed separate legal work from Wilson Elser, each according to its subject matter expertise, (Doc. No. 61: Pl. Resp. 10-11), and Travelers has not shown a genuine issue of material fact concerning the reasonableness of that defense, (Doc. No. 60: Def. Mem. at 4).  Additionally, Travelers, having forfeited the right to control the defense, had no right to dictate which attorneys would and would not be paid when it retroactively decided to provide coverage. Church, 930 S. 2d at 672-673.  Therefore, the Court finds as a matter of law that Plaintiffs are entitled to full reimbursement of their litigation costs from the time of Travelers' breach when the lawsuit was filed on March 13, 2013 until its resolution.  Because the amount of those costs is not readily discernable from the pleadings, the Court reserves judgment on that issue and orders, pursuant to the schedule below, the parties to submit further briefing on how damages should be calculated, including whether an evidentiary hearing is warranted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 36), is **DENIED**.

2. Plaintiffs' Motion for Summary Judgment, (Doc No. 46), is **GRANTED in part** and **DENIED in part**. Specifically, the Court declares that:

    a. Travelers had a duty to defend Schaefer as an additional insured on a primary and non-contributory basis;

    b. Travelers' duty to defend arose at the time Nephron's lawsuit was filed on March 13, 2013; and

    c. Travelers' breached its duty to defend Schaefer and is liable for Schaefer's litigation costs from March 13, 2013, until the Nephron lawsuit was resolved.

3. Plaintiffs shall submit further briefing regarding litigation costs in the state court proceeding within thirty (30) days of this Order. Defendant shall respond within fourteen (14) days of Plaintiffs' filing. Plaintiffs may file a reply within seven (7) days of the date on which the response is filed.

Signed: March 29, 2017

Robert J. Conrad, Jr.
United States District Judge